# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>vs.<br><br>SOMBAT YODPRASIT,<br><br>  Defendant. | No. CR15-4085-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE'S REPORT AND RECOMMENDATION CONCERNING DEFENDANT'S MOTION TO SUPPRESS** |

_____

# TABLE OF CONTENTS

*I.   INTRODUCTION AND BACKGROUND ............................................................ 2*
  *A.   Procedural Background ................................................................. 2*
  *B.   Factual Background ...................................................................... 3*
*II.  LEGAL ANLYSIS ............................................................................................. 5*
  *A.   Standard Of Review ...................................................................... 5*
  *B.   Objections To Report And Recommendation ............................... 10*
    *1.   The point at which Yodprasit invoked his right to remain silent ............................................................................. 10*
    *2.   Equivocal invocations ...................................................... 13*
*III. CONCLUSION ............................................................................................. 14*

## I. INTRODUCTION AND BACKGROUND
### A. *Procedural Background*

This case is before me on United States Magistrate Judge C.J. Williams's Report And Recommendation on Defendant's Motion to Suppress (docket no. 26). In his Report and Recommendation, Judge Williams recommends denying defendant Sombat Yodprasit's Motion to Suppress as to any statements made by Yodprasit during a police interrogation, prior to the timestamp 20:23:29 of that interrogation. I, therefore, undertake the necessary review of Judge Williams's Report and Recommendation.

On December 15, 2015, an Indictment was returned against Yodprasit, charging him conspiracy to distribute 500 grams or more of a methamphetamine mixture which contained 50 grams or more of pure methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Yodprasit subsequently filed a Motion to Suppress in which he seeks to suppress statements he made, during a police interrogation, after invoking his right to remain silent.[1] The prosecution filed a timely resistance to Yodprasit's motion. In its resistance, the prosecution "gives notice that it will not attempt to use affirmatively any of defendant's statements from the post-*Miranda* interview made after timestamp 20:23:29 of the video recording." Government's Resistance at 1. Thus, the issue before Judge Williams was: "whether the court should suppress defendant's statements made between the timestamps 20:06:00 and 20:23:29." Report and Recommendation at 1. Yodprasit's Motion to Suppress was referred to United States Magistrate Judge C.J. Williams, pursuant to 28 U.S.C. § 636(b). Judge Williams filed a Report and Recommendation in which he recommends that Yodprasit's Motion to Suppress be denied as to any statements Yodprasit made prior to timestamp 20:23:29.

---

[1]Specifically, Yodprasit seeks to suppress: "all statements of the Defendant from the 20:06:00 point of the interrogation thereafter," referring to the time indicated on the video recording of his interrogation. Defendant's Br. at 4.

2

Judge Williams concluded that Yodprasit did not unequivocally invoke his right to remain silent until 20:23:29 of the interrogation and, therefore, Yodprasit's statements before that point were not made in violation of his right to remain silent.

Yodprasit has filed objections to Judge Williams's Report and Recommendation. I, therefore, undertake the necessary review of Judge Williams's recommended disposition of Yodprasit's Motion to Suppress.

### B. *Factual Background*

In his Report and Recommendation, Judge Williams made the following factual findings:

> On September 22, 2014, officers arrested the defendant and took him to an interrogation room at the Sioux City Police Department. Doc. 20-1, at 1; Doc. 25, at 1-2. The interrogation was video recorded. *Id.* The court reviewed the recording, offered and accepted into evidence as Exhibit A. The video recording reflects that the officer told defendant that he wanted to ask him some questions and defendant replied that the officer could ask defendant "anything you want." Exhibit A, at 19:45:00-45:04. The officer advised defendant of his constitutional rights (the so-called *Miranda* warning) and defendant stated he understood those rights and that the officer could ask him questions. Exhibit A, at 19:45:05-45:26.
>
> The officer then began asking defendant about a variety of topics involving defendant's involvement with using controlled substances, distributing controlled substances, and his contact with a confidential source (CS) on the night of defendant's arrest. Exhibit A, at 19:45:30 to 20:05:15. At one point, the officer asked defendant if the defendant had any conversations with the CS while they were walking in the woods that night. Exhibit A, at 20:05:15. Defendant denied having any conversations with the CS, claiming to know that the CS was working with law enforcement officers and suspecting the CS was carrying a recording device. When the officer continued to press defendant about the conversation with the CS after defendant's repeated denials, defendant

stated, "I've got noth'n else to say—what I've already told you guys is what I wanna say." Exhibit A, at 20:06:20 -06:27. In response, the officer changed topics and began asking defendant about defendant's drug customers. Exhibit A, at 20:06:27-07:10.

A couple of minutes later, the officer asked defendant whether the CS had ever given defendant methamphetamine in exchange for driving the CS to various locations. The following exchange ensued:

> Defendant: "I don't even want to say anything about that."
>
> Officer: "Why not?"
>
> Defendant: "I don't even want to say anything about that."

Exhibit A, at 20:08:51-08:57. Defendant then insisted that if the officers wanted to catch the "higher-ups" they should talk to the CS.

The officer shifted away from talking about the CS and asked why defendant had been associating with people whom law enforcement officers have caught with drugs. The following exchange then ensued.

> Defendant: "I'm a user."
>
> Officer: "Okay, so you buy dope in town? Who do you buy dope from?"
>
> Defendant: "I don't even want to get anywhere near what you're talking about."
>
> Officer: "Why not? Who do you buy dope from?"
>
> Defendant: "I'm a user and that's it. I don't want to say anything about—I don't want to say noth'n about that stuff."

(Exhibit A, at 20:09:45-10:10). An exchange occurred where the officer sought to find out why defendant did not want to talk about that topic, but then the officer moved on to other topics. At one point, defendant invited the officer to "explain

4

> more" because defendant maintained he was just a user.
> Exhibit A, at 20:11:00. Eventually, defendant said a couple of
> times, "I'm done talking to you." Exhibit A, at 20:23:29.

Report and Recommendation at 2-4. After reviewing the record, I adopt all of Judge Williams's factual findings.[2]

## II. LEGAL ANLYSIS
### A. *Standard Of Review*

I review the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see* FED. R. CIV. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files

---

[2] Yodprasit does not object to any of Judge Williams's factual findings.

an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review"). The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's required *de novo* review is limited to "*de novo* determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been

willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to me that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). I am unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly

7

erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[3]

---

[3]The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous

8

As noted above, Yodprasit has filed objections to Judge Williams's Report and Recommendation. I, therefore, undertake the necessary review of Judge Williams's recommended disposition of Yodprasit's Motion to Suppress.

---

or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. See *United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings, *see Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."'" (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed de novo, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g., United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

## B. Objections To Report And Recommendation

### 1. The point at which Yodprasit invoked his right to remain silent

Yodprasit objects to Judge Williams's finding of when he invoked his right to remain silent. Judge Williams found that Yodprasit's statement, "I am done talking to you," was an unequivocal invocation of his right to remain silent. Yodprasit argues that he unequivocally invoked his right to remain silent sixteen minutes earlier when he said, "I've got noth'n else to say—what I've already told you guys is what I wanna say." Exhibit A, at 20:06:20 -06:27.

The United States Supreme Court has held that if a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 474–75 (1966). The issue, here, must be analyzed in light of the United States Supreme Court's decision in *Davis v. United States*, 512 U.S. 452 (1994), and its progeny. In *Davis*, the defendant was suspected of beating a sailor to death with a pool cue outside a club on the Charleston Naval Base. Based upon information collected, the defendant was interviewed at the Naval Investigative Service. After being advised of his *Miranda* rights, the defendant waived those rights both orally and in writing. About an hour and a half into the interview, the defendant said, "Maybe I should talk to a lawyer." The Supreme Court found that the defendant's statement was not an unambiguous request for counsel and, therefore, the government agents were free to continue questioning the defendant. "If the suspect's statement is not an unambiguous request or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Davis*, 512 U.S. at 461–62; *see Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010) (concluding invocation of right to remain silent must be unambiguous to trigger termination of interrogation). Although it would have been entirely proper for the agents to ask questions clarifying the meaning of the defendant's statement, the Supreme Court declined to adopt a rule requiring officers to ask clarifying questions. *Davis*, 512 U.S. at 461.

In the wake of the *Davis* decision, the Eighth Circuit Court of Appeals has held that an ambiguous invocation of the right to remain silent does not require that the police cease all questioning. *See United States v. Ferrer–Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) ("A suspect invokes his right to remain silent by making a clear, consistent expression of a desire to remain silent. Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*.") (citations omitted); *United States v. Johnson*, 56 F.3d 947, 955 (8th Cir. 1995) ("We consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent.") (citing *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). In J*ohnson*, the Eighth Circuit Court of Appeals applied the *Davis* rule of unequivocal invocation. In *Johnson*, the court instructed that:

> After giving *Miranda* warnings to a suspect in custody, "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." [*Miranda*] at 473–74, 86 S. Ct. at 1627. "[A] person's 'right to cut off questioning'" is central to the Fifth Amendment, and this right must be "'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975) (quoting *Miranda*, 384 U.S. at 474, 479, 86 S. Ct. at 1628, 1630). To adequately invoke this right and effectively cut off questioning, a suspect must indicate "a clear, consistent expression of a desire to remain silent." *United States v. Thompson*, 866 F.2d 268, 272 (8th Cir. 1989). We consider the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent.

*Johnson*, 56 F.3d at 955. In *Johnson*, after the officers read the defendant his *Miranda* warnings, he stated that he did not think that talking to the police would help him since the police had all the evidence and, therefore, he also stated that he did not need to say anything. *Id*. In affirming the district court's denial of the defendant's motion to suppress these statements, the Eighth Circuit Court of Appeals concluded that the defendant's

11

statements were indirect, ambiguous, and equivocal. *Id*. Thus, the Eighth Circuit Court of Appeals held that the defendant's statements did not constitute an invocation of his right to remain silent. *Id.*

I have carefully reviewed the video of the interrogation. Yodprasit was interrogated by Task Force Officer Brian Clausen and Special Agent Gregg Fox. Yodprasit was talkative during most of the interrogation. The comments Yodprasit made up to 20:05:15 appear to be part of the general give and take of the interrogation. At that point, Officer Clausen and Yodprasit's discussion becomes somewhat heated when Officer Clausen presses Yodprasit about a conversation he had with a confidential source in the Bacon Creek Park woods, despite Yodprasit's denials that such a conversation had occurred. It was at this juncture that Yodprasit stated, "I've got noth'n else to say—what I've already told you guys is what I wanna say." Exhibit A, at 20:06:20-06:27. I agree with Judge Williams's assessment that Yodprasit's statement was not "a clear, consistent expression of a desire to remain silent." *Thompson,* 866 F.2d at 272. Rather, it was an equivocal statement under the circumstances insufficient to invoke the right to remain silent. Significantly, Yodprasit's statement followed repeated efforts by Officer Clausen to get Yodprasit to change his position about not talking to the confidential source. The clear gist of Yodprasit's statement is that he no longer wishes to talk to Officer Clausen on that issue. "A suspect's refusal to answer certain questions . . . is not tantamount to the invocation, either equivocal or unequivocal, of the constitutional right to remain silent and ... questioning may continue until the suspect articulates in some manner that [s]he wishes the questioning to cease." *United States v. Thomas*, Criminal Action No. 4:13–CR–22–RLV, 2014 WL 793359, at *8 (N.D .Ga. Feb. 25, 2014). When Officer Clausen dropped this line of inquiry, Yodprasit freely answers questions on the new topic. "Being evasive and reluctant to talk is different from invoking one's right to remain silent." *Mann v. Thalacker*, 246 F.3d 1092, 1100 (8th Cir. 2001). Accordingly, Yodprasit's objection to Judge Williams's finding that Yodprasit did not unequivocally invoke his right to remain

silent when he said, "I've got noth'n else to say—what I've already told you guys is what I wanna say," is denied.

On the other hand, at timestamp 20:23:29, when Yodprasit repeatedly states "I'm done talking to you," it appears to me that Yodprasit has grown tired of the interrogation and he wants it to cease. There is no ambiguity in the plain language Yodprasit used. He employed no conditional or equivocal words in his statement. I believe that it should have been clear to a reasonable person listening to Yodprasit that he was unequivocally invoking his the right to remain silent and the interrogation should have ceased at this point.[4] The prosecution concedes that Yodprasit unequivocally invoked his right to remain silent at this point and will not attempt to use any statements made by Yodprasit after it. Accordingly, Yodprasit's Motion to Suppress is granted as to any statements made by Yodprasit after the timestamp 20:23:29.

### 2. *Equivocal invocations*

Yodprasit further objects to Judge Williams's not recommending the suppression of Yodprasit's equivocal invocations of the right to remain silent. Specifically, Yodprasit seeks the suppression of his statements: "I've got noth'n else to say—what I've already told you guys is what I wanna say," at 20:06:20 -06:27; "I don't even want to say anything about that," at 20:08:51-08:57; and "I don't want to say anything about—I don't want to say noth'n about that stuff, " at 20:09:45-10:10. Yodprasit argues that these were "unequivocal" invocations to remain silent "as to a particular topic" and that: "[a] jury should not be allowed to see the Defendant exercise his right to remain silent regarding that topic and draw any inferences therefrom, either positive or negative." Defendant's Obj. at 5. Yodprasit's argument confuses a motion to suppress with a motion in limine.

---

[4]*But see Avila v. Biter*, No. 2:10–cv–2857, 2014 WL 584548, at *25 (E.D. Cal. Feb. 12, 2014) (finding the statement "No, I'm done talking here" to suggest the defendant was willing to talk somewhere else, and the statement "I'm done talking to you" to suggest the defendant was, among other things, willing to talk to someone else and, therefore concluding that neither statement unequivocally invoked the right to remain silent).

13

*See United States v. Acox*, 595 F.3d 729, 732–33 (7th Cir. 2010) ("The term 'motion to suppress' covers efforts to invoke the exclusionary rule, or the *Miranda* doctrine, or the many other constitutional and statutory rules that keep probative evidence out of the trial record. . . . The exclusionary rule covers 'fruit of the poisonous tree' and so deals with testimony about, or derived from, unlawfully seized evidence. . . . Although the Rules of Criminal Procedure do not define 'motion to suppress', the phrase may be given meaning by thinking about what it is not: a motion under a Rule of Evidence. . . . A request for a decision under the Rules of Evidence may be made before trial (lawyers often call these 'motions in limine'). . . . Objections outside the Rules of Evidence properly may be called 'motions to suppress.'"). Nonetheless, this objection is rendered moot because the prosecution agrees not to use Yodprasit's invocations of his right to remain silent at trial.

### III.  CONCLUSION

Therefore, for the reasons discussed above, I, upon a *de novo* review of the record, accept Judge Williams's Report and Recommendation and deny defendant Yodprasit's Motion to Suppress as to any statements made by Yodprasit prior to the timestamp 20:23:29. Yodprasit's Motion to Suppress is granted as to any statements made by Yodprasit after the timestamp 20:23:29.

**IT IS SO ORDERED**.

**DATED** this 17th day of March, 2016.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA